UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION
_____

LAWRENCE DALLAS,

              Plaintiff,              Case No. 2:17-cv-198

v.                                   Honorable Paul L. Maloney

CHIPPEWA CORRECTIONAL FACILITY
et al.,

              Defendants.
_____/

## OPINION

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim against Defendants Chippewa Correctional Facility (URF), O'Brien, McLean, Meehan, Rosso, Pecock, Watkins, Durant, Deputy Warden Unknown Party #1, Balbierz, and Greenleaf. The Court will serve the complaint against Defendants Davidson, Conners, and Koshela.

**Discussion**

I.      **Factual allegations**

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Oaks Correctional Facility (ECF) in Manistee, Manistee County, Michigan. The events about which he complains, however, occurred at the Chippewa Correctional Facility (URF) in Kincheloe, Chippewa County, Michigan. According to Plaintiff's complaint and supplemental pleadings (ECF Nos. 1, 9, and 11), Plaintiff sues the Chippewa Correctional Facility, Hearing Officer Unknown O'Brien, Grievance Coordinator M. McLean, Corrections Officer Unknown Meehan, Corrections Officer Unknown Rosso, Corrections Officer Unknown Pecock, Sergeant Unknown Davidson, Corrections Officer Unknown Conners, Corrections Officer Unknown Koshela, Lieutenant Unknown Watkins, and Hearings Investigator Unknown Durant. Plaintiff also names Deputy Warden Unknown Party, Corrections Officer Balbierz, and Corrections Officer Greenleaf as Defendants.

Plaintiff alleges that he suffers from dyslexia, depression, and OCD, so that writing complaints and pleadings is difficult for him. Plaintiff states that he arrived at URF on September 14, 2016. While Plaintiff was eating a sandwich for dinner in the chowhall, he noticed that corrections officers were clearing up the trays, so he decided to finish eating his sandwich while walking back to his unit. One of the corrections officers told Plaintiff to throw the sandwich away, and Plaintiff complied but concedes that he had a "little bit of an attitude." Defendant Davidson told Plaintiff to go to the control center. Plaintiff told Defendant Davidson that he was making a big deal out of nothing and Defendant Davidson responded by having Plaintiff handcuffed and taken to segregation. Plaintiff received a misconduct for threatening behavior, which falsely stated that Plaintiff had threatened to make the situation a big deal and that his veins had been sticking

out in his neck. Plaintiff later discovered that there was no video of the incident, which Plaintiff claims requires dismissal of the misconduct. Plaintiff claims that this was the beginning of a campaign of harassment against him and that he received 40 tickets in a period of 9 months. Plaintiff states that he received tickets for behavior that might warrant a warning under normal conditions, such as using the bathroom without permission at 3:00 a.m.

Following the sandwich incident, Plaintiff was denied use of the bathroom on more than one occasion, telling Plaintiff to pee his pants. Defendant Watkins told Plaintiff that he would be on level 4 or in segregation soon, and that he told new prison employees the same thing. Plaintiff alleges that on November 18, 2016, he got a ticket for getting a tattoo and received a more severe punishment than the prisoner who gave him the tattoo, despite the fact that the other prisoner was already on non-bond status. Plaintiff claims that Defendant O'Brien is responsible for the inequitable punishment. Plaintiff received out of place tickets on November 16, 18, 24, 25, and 30, and also on December 3, 6, and 8 of 2016. In addition, Plaintiff received a ticket for the violation of a posted rule on November 25, 2016. On December 8, 2016, Plaintiff received a ticket for insolence after he was prevented from using the phone to call his girlfriend. On one occasion, while Defendant Rosso was searching his cell, Plaintiff saw trash in the hallway and threw it away in order to be helpful. Defendant Rosso told Plaintiff that he had not had permission to throw the trash away and gave him a ticket. Plaintiff also received an out of place ticket for sitting on his bunk and having one foot on his chair during count. Plaintiff became depressed and frustrated and began cutting himself.

At one point, Defendant Davidson came to the unit and told Plaintiff that he had three tickets to review with him. Plaintiff told him that he could not take it any longer and to just take him to the hole. Plaintiff states that he was disappointed and depressed, but not angry or

combative. Defendant Davidson told Defendants Conners and Koshela to cuff Plaintiff up and take him to the hole. As they were walking toward segregation, Plaintiff stated that the cuffs were too tight and asked to have them loosened. The officers told Plaintiff to stop resisting, and Plaintiff stated, "I am not resisting. Loosen the cuffs." Defendants Conners and Koshela then threw Plaintiff face down onto the pavement, stating that Plaintiff should have stopped resisting. Plaintiff claims that the use of force was completely unnecessary and that, as a result, he suffers from permanent scarring around one eye and tinnitus. Plaintiff received a ticket for assault and resisting.

Since that incident, Plaintiff has tried to commit suicide twice and was placed in inpatient treatment at a mental health facility for 30 days. After his release, Plaintiff was enrolled in an outpatient program. Plaintiff got into a fight while in the mental health program and was released from the program and returned to URF. Once Plaintiff arrived at URF, Defendant Davidson immediately began talking about Plaintiff to other prison staff, including Defendants Meehan, Balbierz, and Greenleaf, and Plaintiff began to receive misconduct tickets from these individuals.

On June 10, 2017, Plaintiff received misconduct tickets for being in the "red box" near the phone, for being on the phone, and for insolence. The ticket states that Plaintiff was warned about the red box several times, but Plaintiff was only warned once. Plaintiff states that he was on a break from sanctions when he attempted to phone his girlfriend. Defendant Balbierz told Plaintiff he was going to give him a ticket and Plaintiff "lost it" and gave Defendant Balbierz "the finger" and told him to "fuck off." Plaintiff claims that according to MDOC policy, he should have been able to use the phone while on a break from sanctions and on holidays, and that he is able to do so at ECF. Plaintiff asserts that Defendant Balbierz turned off his phone access in violation of his First, Eighth, and Fourteenth Amendment rights. Plaintiff claims that officers at

4

URF engage in a practice of writing numerous misconduct tickets on prisoners, which results in an increased security level, and that Defendant Deputy Warden has failed to take corrective action on this issue. Plaintiff claims that he was unable to obtain relief through the grievance procedure, which is the responsibility of Defendant McLean.

Plaintiff claims that Defendants violated his rights under the First, Eighth, and Fourteenth Amendments, as well as under state law. Plaintiff seeks compensatory, punitive, and nominal damages.

## II. Failure to state a claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P.

8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

Plaintiff's complaint seeks compensatory and punitive damages from URF. An express requirement of 42 U.S.C. § 1983 is that the defendant be a "person." *See Monell v. Dep't of Social Servs.*, 436 U.S. 658 (1978). URF is an administrative unit of the Michigan Department of Corrections. Neither a prison nor a state corrections department is a "person" within the meaning of section 1983. *Will v. Michigan Dep't of State Police*, 491 U.S. 58 (1989). Furthermore, Plaintiff's claim against this Defendant is barred by the Eleventh Amendment. *Alabama v. Pugh*, 438 U.S. 781, 782 (1978). That amendment prohibits suits in federal court against the state or any of its agencies or departments. *Pennhurst State School & Hosp. v. Haldermann*, 465 U.S. 89, 100 (1984). A state's Eleventh Amendment immunity is in the nature of a jurisdictional defense and may be raised on the court's own motion. *Estate of Ritter v. University of Michigan*, 851 F.2d 846, 851 (6th Cir. 1988). The Supreme Court has squarely held that the Eleventh Amendment bars federal suits against state departments of corrections. *Alabama*

*v. Pugh*, 438 U.S. 781, 782 (1978) (per curiam). URF is therefore not subject to a section 1983 action.

The Court notes that Defendant O'Brien is a hearing officer whose duties are set forth at Mich. Comp. Laws § 791.251 through § 791.255. Hearing officers are required to be attorneys and are under the direction and supervision of a special hearing division in the Michigan Department of Corrections. *See* Mich. Comp. Laws § 791.251(e)(6). Their adjudicatory functions are set out in the statute, and their decisions must be in writing and must include findings of facts and, where appropriate, the sanction imposed. *See* Mich. Comp. Laws § 791.252(k). There are provisions for rehearings, *see* Mich. Comp. Laws § 791.254, as well as for judicial review in the Michigan courts. *See* Mich. Comp. Laws § 791.255(2). Accordingly, the Sixth Circuit has held that Michigan hearing officers are professionals in the nature of administrative law judges. *See Shelly v. Johnson*, 849 F.2d 228, 230 (6th Cir. 1988). As such, they are entitled to absolute judicial immunity from inmates' § 1983 suits for actions taken in their capacities as hearing officers. *Id.*; *and see Barber v. Overton*, 496 F.3d 449, 452 (6th Cir. 2007); *Dixon v. Clem*, 492 F.3d 665, 674 (6th Cir. 2007); *cf. Pierson v. Ray*, 386 U.S. 547, 554-55 (1967) (judicial immunity applies to actions under § 1983 to recover for alleged deprivation of civil rights). Therefore, Plaintiff's claims against Defendant O'Brien are properly dismissed.

Plaintiff claims that Defendants McLean prevented him from getting meaningful relief through the grievance process. Plaintiff has no due process right to file a prison grievance. The courts repeatedly have held that there exists no constitutionally protected due process right to an effective prison grievance procedure. *See Hewitt v. Helms*, 459 U.S. 460, 467 (1983); *Walker v. Mich. Dep't of Corr.,* 128 F. App'x 441, 445 (6th Cir. 2005); *Argue v. Hofmeyer*, 80 F. App'x 427, 430 (6th Cir. 2003); *Young v. Gundy,* 30 F. App'x 568, 569-70 (6th Cir. 2002); *Carpenter v.*

*Wilkinson,* No. 99-3562, 2000 WL 190054, at *2 (6th Cir. Feb. 7, 2000); *see also Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996); *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994) (collecting cases). Michigan law does not create a liberty interest in the grievance procedure. *See Olim v. Wakinekona,* 461 U.S. 238, 249 (1983); *Keenan v. Marker*, 23 F. App'x 405, 407 (6th Cir. 2001); *Wynn v. Wolf*, No. 93-2411, 1994 WL 105907, at *1 (6th Cir. Mar. 28, 1994). Because Plaintiff has no liberty interest in the grievance process, Defendant McLean's conduct did not deprive him of due process.

The Court notes that Plaintiff fails to mention Defendants Pecock and Durant in the body of his complaint. Conclusory allegations of unconstitutional conduct without specific factual allegations fail to state a claim under § 1983. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Therefore, Defendants Pecock and Durant are properly dismissed.

Plaintiff claims that Defendant Deputy Warden Unknown Party #1 is responsible for the conduct of officers at URF because he has failed to take corrective action to prevent them from writing excessive misconduct tickets in order to harass prisoners. Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575-76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Moreover, § 1983 liability may not be imposed simply because a

supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. Plaintiff has failed to allege that Defendant Deputy Warden Unknown Party #1 engaged in any active unconstitutional behavior. Accordingly, he fails to state a claim against him.

Plaintiff claims that Defendants Meehan, Rosso, Davidson, Balbierz, and Greenleaf were among prison employees who wrote excessive misconduct tickets on Plaintiff, some of which were false or unwarranted. Plaintiff claims that these tickets resulted emotional distress and psychological trauma, an increase in his security level, and the imposition of sanctions, including the loss of phone privileges. Plaintiff claims that these misconducts violated his rights under the First, Eighth, and Fourteenth Amendments.

The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous" nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345-46 (1981). The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600-01 (6th Cir. 1998). The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual

punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954.

In order for a prisoner to prevail on an Eighth Amendment claim, he must show that he faced a sufficiently serious risk to his health or safety and that the defendant official acted with "'deliberate indifference' to [his] health or safety." *Mingus v. Butler*, 591 F.3d 474, 479-80 (6th Cir. 2010) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (applying deliberate indifference standard to medical claims); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993) (applying deliberate indifference standard to conditions of confinement claims)).

Plaintiff claims that the conditions and restrictions imposed upon him as a segregated prisoner have caused him mental distress in violation of his Eighth Amendment rights. Plaintiff specifically cites limited phone use as a hardship. The Eighth Amendment prohibits punishments that are not only physically barbaric, but also those which are incompatible with "the evolving standards of decency that mark the progress of a maturing society," or which "involve the unnecessary and wanton infliction of pain." *Estelle v. Gamble*, 429 U.S. 97, 102-103(1976). To establish an Eighth Amendment claim, the prisoner must show that he was deprived of the "minimal civilized measure of life's necessities." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). Restrictions that are restrictive or even harsh, but are not cruel and unusual under contemporary standards, are not unconstitutional. *Id.* Thus, federal courts may not intervene to remedy conditions that are merely unpleasant or undesirable.

Placement in segregation is a routine discomfort that is "'part of the penalty that criminal offenders pay for their offenses against society.'" *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (quoting *Rhodes*, 452 U.S. 337, 347 (1981); *see also Jones v. Waller*, No. 98-5739, 1999 WL 313893, at *2 (6th Cir. May 4, 1999). Although it is clear that Plaintiff was denied certain privileges as a result of his administrative segregation, he does not allege or show that he was

denied basic human needs and requirements. The Sixth Circuit has held that without a showing that basic human needs were not met, the denial of privileges as a result of administrative segregation cannot establish an Eighth Amendment violation. *See Evans v. Vinson*, 427 F. App'x 437, 443 (6th Cir. 2011); *Harden-Bey v. Rutter*, 524 F.3d 789, 795 (6th Cir. 2008). Moreover, Plaintiff cannot bring an Eighth Amendment claim for emotional or mental damages because he does not allege a physical injury as a result of mere placement in segregation or the denial of phone usage. *See* 42 U. S.C. §1997e(e); *see also Hudson*, 503 U.S. at 5; *Harden-Bey*, 524 F.3d at 795. As a result, Plaintiff fails to state an Eighth Amendment claim against Defendants for the allegedly excessive issuance of misconducts against him.

Nor do the misconduct tickets receive by Plaintiff constitute a violation of his due process rights. A prisoner's ability to challenge a prison misconduct conviction depends on whether the convictions implicated any liberty interest. In the seminal case in this area, *Wolff v. McDonnell*, 418 U.S. 539 (1974), the Court prescribed certain minimal procedural safeguards that prison officials must follow before depriving a prisoner of good-time credits on account of alleged misbehavior. The *Wolff* Court did not create a free-floating right to process that attaches to all prison disciplinary proceedings; rather the right to process arises only when the prisoner faces a loss of liberty, in the form of a longer prison sentence caused by forfeiture of good-time credits:

> It is true that the Constitution itself does not guarantee good-time credit for satisfactory behavior while in prison. But here the State itself has not only provided a statutory right to good time but also specifies that it is to be forfeited only for serious misbehavior. Nebraska may have the authority to create, or not, a right to a shortened prison sentence through the accumulation of credits for good behavior, and it is true that the Due Process Clause does not require a hearing "in every conceivable case of government impairment of private interest." But the State having created the right to good time and itself recognizing that its deprivation is a sanction authorized for major misconduct, the prisoner's interest has real substance and is sufficiently embraced within Fourteenth Amendment "liberty" to entitle him to those minimum procedures appropriate under the circumstances and required by

11

>the Due Process Clause to insure that the state-created right is not arbitrarily abrogated.

*Wolff*, 418 U.S. at 557 (citations omitted).

Plaintiff does not allege that his major misconduct convictions resulted in any loss of good-time credits, nor could he. The Sixth Circuit has examined Michigan statutory law, as it relates to the creation and forfeiture of disciplinary credits[1] for prisoners convicted of crimes occurring after April 1, 1987. In *Thomas v. Eby*, 481 F.3d 434 (6th Cir. 2007), the court determined that loss of disciplinary credits does not necessarily affect the duration of a prisoner's sentence. Rather, it merely affects parole eligibility, which remains discretionary with the parole board. *Id.* at 440. Building on this ruling, in *Nali v. Ekman*, 355 F. App'x 909 (6th Cir. 2009), the court held that a misconduct citation in the Michigan prison system does not affect a prisoner's constitutionally protected liberty interests, because it does not necessarily affect the length of confinement. 355 F. App'x at 912; *accord, Taylor v. Lantagne*, 418 F. App'x 408, 412 (6th Cir. 2011); *Wilson v. Rapelje*, No. 09-13030, 2010 WL 5491196, at * 4 (E.D. Mich. Nov. 24, 2010) (Report & Recommendation) (holding that "plaintiff's disciplinary hearing and major misconduct sanction does not implicate the Fourteenth Amendment Due Process Clause"), *adopted as judgment of court*, 2011 WL 5491196 (Jan. 4, 2011). In the absence of a demonstrated liberty interest, Plaintiff has no due-process claim based on the loss of disciplinary credits. *See Bell v. Anderson*, 301 F. App'x 459, 461-62 (6th Cir. 2008).

Even in the absence of a protectible liberty interest in disciplinary credits, a prisoner may be able to raise a due-process challenge to prison misconduct convictions that result in a significant, atypical deprivation. *See Sandin v. Connor*, 515 U.S. 472 (1995). As noted above,

---

[1] For crimes committed after April 1, 1987, Michigan prisoners earn "disciplinary credits" under a statute that abolished the former good-time system. Mich. Comp. Laws § 800.33(5).

12

Plaintiff claims that the imposition of a phone restriction violated his due process rights. However, Plaintiff's claim that the phone restriction violated his Fourteenth Amendment right to procedural due process lacks merit. *See Allen v. Alexsander*, No. 2:16-CV-245, 2017 WL 2952929, at *5 (W.D. Mich. July 11, 2017) (a 90 day phone restriction does not implicate a liberty interest). *See also Johnson v. Vroman*, No. 1:06-cv-145, 2006 WL 1050497, at *2 (W.D. Mich. Apr. 19, 2006) (a 6 month restriction on telephone privileges does not amount to an atypical or significant hardship in relation to the ordinary incidents of prison life that would trigger the protection of the Due Process Clause). Because Plaintiff's allegations do not constitute an atypical and significant hardship, Plaintiff's due process claims regarding his lack of telephone usage while on sanctions at URF are properly dismissed.

As noted above, Plaintiff claims that the refusal to allow him to use a phone every thirty days while on a break from sanctions violated his rights under the First Amendment. While access to the outside world via telephone and writing materials may, under certain circumstances, implicate a prisoner's rights under the First Amendment, *see Washington v. Reno,* 35 F.3d 1093, 1100 (6th Cir.1994) (prisoners have right to "reasonable" access to telephone), the temporary deprivations of which Plaintiff complains under the circumstances presented and in light of the fact that he was in segregation, did not violate the First Amendment. *Cf. Almahdi v. Ashcroft,* 310 F. App'x 519 (3d Cir.2009) (holding that prison's restriction of prisoner's telephone access to one phone call per month did not violate the First Amendment where the restriction was reasonably related to the prison's legitimate security concerns and the prisoner had already committed two telephone-related rule infractions). In this case, Plaintiff was not deprived of the ability to communicate with his girlfriend and members of his family by letter. Plaintiff does not allege that his access to the courts was hampered or that he was prejudiced in any ongoing legal proceedings.

Plaintiff claims that Defendant Watkins violated his Eighth Amendment rights by verbally harassing him, telling him that he would be on segregation soon, and by talking about Plaintiff with other prison staff. The use of harassing or degrading language by a prison official, although unprofessional and deplorable, does not rise to constitutional dimensions. *See Ivey v. Wilson*, 832 F.2d 950, 954-55 (6th Cir. 1987); *see also Johnson v. Dellatifa*, 357 F.3d 539, 546 (6th Cir. 2004) (harassment and verbal abuse do not constitute the type of infliction of pain that the Eighth Amendment prohibits); *Violett v. Reynolds,* No. 02-6366, 2003 WL 22097827, at *3 (6th Cir. Sept. 5, 2003) (verbal abuse and harassment do not constitute punishment that would support an Eighth Amendment claim); *Thaddeus-X v. Langley*, No. 96-1282, 1997 WL 205604, at *1 (6th Cir. Apr. 24, 1997) (verbal harassment is insufficient to state a claim); *Murray v. U.S. Bureau of Prisons*, No. 95-5204, 1997 WL 34677, at *3 (6th Cir. Jan. 28, 1997) ("Although we do not condone the alleged statements, the Eighth Amendment does not afford us the power to correct every action, statement or attitude of a prison official with which we might disagree."); *Clark v. Turner*, No. 96-3265, 1996 WL 721798, at *2 (6th Cir. Dec. 13, 1996) ("Verbal harassment and idle threats are generally not sufficient to constitute an invasion of an inmate's constitutional rights."); *Brown v. Toombs*, No. 92-1756, 1993 WL 11882 (6th Cir. Jan. 21, 1993) ("Brown's allegation that a corrections officer used derogatory language and insulting racial epithets is insufficient to support his claim under the Eighth Amendment."). Accordingly, Plaintiff fails to state an Eighth Amendment claim against Defendant Watkins arising from his alleged verbal abuse.

The Court concludes that Plaintiff's Eighth Amendment excessive force claims against Defendants Davidson, Conners, and Koshela are not clearly frivolous and may not be dismissed on initial review.

### III. Pending motions

Plaintiff has filed a motion for a preliminary injunction (ECF No. 12) seeking an order "to restore his right to photocopy and access court" against library staff at ECF. Plaintiff also seeks paper, envelopes, and postage as needed to litigate this action. The issuance of preliminary injunctive relief is committed to the discretion of the district court. *Planned Parenthood Association v. City of Cincinnati*, 822 F.2d 1390, 1393 (6th Cir. 1987). In exercising that discretion, the court must consider and balance four factors:

1. Whether the movant has shown a strong or substantial likelihood or probability of success on the merits.

2. Whether the movant has shown irreparable injury.

3. Whether the preliminary injunction could harm third parties.

4. Whether the public interest would be served by issuing a preliminary injunction.

*Washington v. Reno*, 35 F.3d 1093 (6th Cir. 1994). These factors are not prerequisites to the grant or denial of injunctive relief, but factors that must be carefully balanced by the district court in exercising its equitable powers. *Id.*

Moreover, where a prison inmate seeks an order enjoining state prison officials, this Court is required to proceed with the utmost care and must recognize the unique nature of the prison setting. *See Kendrick v. Bland*, 740 F.2d 432 at 438, n.3, (6th Cir. 1984). *See also Harris v. Wilters*, 596 F.2d 678 (5th Cir. 1979). It has also been remarked that a party seeking injunctive relief bears a heavy burden of establishing that the extraordinary and drastic remedy sought is appropriate under the circumstances. *See Checker Motors Corp. v. Chrysler Corp.*, 405 F.2d 319 (2d Cir. 1969), *cert. denied*, 394 U.S. 999 (1969). *See also O'Lone v. Estate of Shabazz*, 482 U.S. 342 (1986).

Plaintiff's "initial burden" in demonstrating entitlement to preliminary injunctive relief is a showing of a strong or substantial likelihood of success on the merits of his Section 1983 action. *NAACP v. City of Mansfield, Ohio*, 866 F.2d 162, 167 (6th Cir. 1989). A review of the materials of record fails to establish a substantial likelihood of success with respect to Plaintiff's claim that Defendants have violated his federal rights. Furthermore, Plaintiff has failed to establish that he will suffer irreparable harm absent injunctive relief.

Finally, in the context of a motion impacting on matters of prison administration, the interests of identifiable third parties and the public at large weigh against the granting of an injunction. Any interference by the federal courts in the administration of state prison matters is necessarily disruptive. The public welfare therefore militates against the issuance of extraordinary relief in the prison context, absent a sufficient showing of a violation of constitutional rights. *See Glover v. Johnson*, 855 F.2d 277, 286-87 (6th Cir. 1988). That showing has not been made here. Plaintiff's claims that he is being denied photocopies, postage, and writing materials are conclusory and unsupported by any specific factual allegations. Plaintiff fails to specifically state which documents he needs copied or the reason for the copies. The grievance response attached to Plaintiff's motion indicates that Plaintiff was denied copies because he did not specify that they related to an ongoing lawsuit. (ECF No. 12-3, PageID.149.) In addition, Plaintiff attaches exhibits showing that he grieved the denial of postage to send an initial filing fee, but he fails to specify a case name or number. However, this denial appears to be unrelated to the current lawsuit. (ECF No. 12-2.) *De Beers Consol. Mines Ltd. v. United States*, 325 U.S. 212, 220 (1945) (preliminary injunction appropriate to grant relief of "the same character as that which may be granted finally," but inappropriate where the injunction "deals with a matter lying wholly outside of the issues in the suit.") Therefore, the Court will deny Plaintiff's motion for a preliminary injunction.

Plaintiff has also filed a motion seeking the return of $21.00 that he apparently paid to the prison for copies. (ECF No. 14.) Plaintiff fails to allege any facts or law in support of this request. Therefore, it is properly denied.

### **Conclusion**

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Defendants Chippewa Correctional Facility (URF), O'Brien, McLean, Meehan, Rosso, Pecock, Watkins, Durant, Deputy Warden Unknown Party #1, Balbierz, and Greenleaf will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court will serve the complaint against Defendants Davidson, Conners, and Koshela with regard to Plaintiff's excessive force claims.

Plaintiff's pending motions (ECF Nos. 12 and 14) are **DENIED**.

An Order consistent with this Opinion will be entered.

Dated: August 13, 2018     /s/ Paul L. Maloney
                           Paul L. Maloney
                           United States District Judge