UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

LAWRENCE DALLAS #314685,

                 Plaintiff,

    v.

DAVID KOSKELA, et al.,

                Defendants.

_____/

Case No. 2:17-cv-00198

Hon. Paul L. Maloney
U.S. District Judge

## REPORT AND RECOMMENDATION

### I.    Introduction

State prisoner Lawrence Dallas filed this civil rights action pursuant to 42 U.S.C. § 1983 on November 30, 2017.  Dallas says that while he was confined at Chippewa Correctional Facility (URF) in 2016, the Defendants subjected him to excessive force, in violation of the Eighth Amendment, when Dallas was being moved to isolation.

The Defendants in the case are Sgt. Davidson and Corrections Officers (COs) Koskela and Conners, all of whom work at the Chippewa Correctional Facility (URF).

This report and recommendation addresses (1) Dallas's request, pursuant to Fed. R. Civ. P. 56(d), that the Court defer decision on Defendants' motion summary judgment and allow additional for discovery (ECF No. 58-1, PageID.763; ECF No. 59, PageID.766-769), (2) the Defendants' motion for summary judgment (ECF No. 43,

1

PageID.477), and (3) Dallas's motion to amend his complaint (ECF No. 60, PageID.777).

In their motion for summary judgment, the Defendants argue (1) that Dallas fails to establish Eighth Amendment excessive-force claims against them and (2) that Defendants are entitled to qualified immunity.

Dallas has not filed a formal response to Defendants' motion.  Instead, Dallas has submitted various pleadings that contain fragmentary responses to Defendants' motion.  (ECF No. 58, PageID.758; ECF No. 58-1, PageID.760-763; ECF No. 59, PageID.764-776.)  Of note, Dallas filed two affidavits, each citing Fed. R. Civ. P. 56(d), in which he  argued that the Court should defer ruling on Defendants' motion until after Dallas can access facts and information that has been withheld.  (ECF No. 58-1, PageID.762-763, ECF No. 59, PageID.768-769.)

As an initial matter, the undersigned recommends denial of Dallas's Rule 56(d) request because Dallas failed to provide valid reasons as to why the Court should defer ruling on Defendants' summary judgment motion and re-open discovery.

On November 1, 2019, several days after Dallas's response to Defendants' motion for summary judgment was due, Dallas filed a motion to amend his complaint. (ECF No. 60 PageID.777.)  Dallas attached a 146-page document that he identifies as his proposed amended complaint.  (ECF No. 60-1, PageID.783.)  Dallas's motion does not attempt to explain why the Court should grant his motion to amend under Fed. R. Civ. P. 15 (relating to amended and supplemental pleadings) or any other

controlling federal law.   In his motion, Dallas seems to argue that the Defendants withheld the video evidence.

In response, Defendants argue that (1) Dallas failed to include an actual amended complaint, (2) Dallas's attachment – the proposed amended complaint – does not comply with Fed. R. Civ. P. 10(b), and (3) the proposed amended complaint seems to ask the Court to grant summary judgment based on the exhibits within the 146-page proposed amended complaint.  (ECF No. 61, PageID.929.)

The undersigned concludes (1) that Dallas has failed to present evidence establishing a genuine issue of fact regarding his Eighth Amendment claims, and (2) that Dallas has not shown that an amendment to his complaint is justified.

The undersigned respectfully recommends that the Court (1) grant Defendants' motion for summary, (2) deny Dallas's motion to amend his complaint, and (3) dismiss Dallas's Eighth Amendment excessive-force claims against Defendants with prejudice.

## II.    Additional Relevant Procedural History

On August 13, 2018, the Court issued a screening opinion and order that dismissed all claims against all Defendants, except for Dallas's Eighth Amendment excessive-force claims against Sgt. Davidson and COs Koskela and Conners.  (ECF No. 16, PageID.172; ECF No. 17, PageID.189.)

On November 13, 2018, the Court issued a case management order (CMO). (ECF No. 34, PageID.447.)  The CMO set a deadline of March 3, 2019 for the close of discovery, and a deadline of April 17, 2019 for filing dispositive motions.

On April 16, 2019, Defendants filed their motion for summary judgment. (ECF No. 43, PageID.477.)

After the close of discovery, Dallas filed several motions relating to discovery. (*See* ECF No. 47, PageID.543 (motion to view video); ECF No. 48, PageID.577 (motion to compel discovery); ECF No. 52, PageID.609 (motion to compel discovery and extend discovery deadline, dated June 20, 2019).) Each motion was denied.

On September 24, 2019, the Court extended Dallas's time to file his response to Defendants' motion for summary judgment to October 28, 2019 because of his *pro se* status, inexperience, and misunderstanding of litigation procedure. (ECF No. 54, PageID.680.)

On October 28, 2019 – the day Dallas's response was due – he filed a letter to the Court and an affidavit. (ECF No. 57, PageID.756; ECF No. 58, PageID.758.) The affidavit alleged that Defendants withheld evidence and argued, citing Fed. R. Civ. P. 56(d), that the Court should not rule of Defendants' summary judgment motion. Also on October 28, 2019, Dallas filed a supplement to the affidavit he filed in ECF No. 58. (ECF No. 59, PageID.764.)

Dallas's request under Fed. R. Civ. P. 56(d) was couched in affidavits he filed rather than in a formal motion. Defendants have not filed responses to these requests.

On November 1, 2019, Dallas filed a motion to amend his complaint and a proposed amended complaint. (ECF No. 60 PageID.777; ECF No. 60-1, PageID.783.)

On November 7, 2019, Defendants responded in opposition to Dallas's motion to amend. (ECF No. 61, PageID.929.)

Dallas has also filed a document addressed to the Office of Legislative Council Administrator. (ECF No. 64, PageID.938.) He attached six exhibits to this filing.

### III.    Relevant Factual Allegations

In about December 2016, Sgt. Davidson came to Dallas's housing unit to review three misconduct tickets that Dallas received. (ECF No. 1, PageID.9.) Dallas told Davidson that he could not take it any longer and to take him to the "hole." (*Id.*) Following Dallas's statements, Davidson asked Conners and Koskela to "cuff [Dallas] up." (*Id.*) They did so. (*Id.*)

Dallas was then escorted to confinement with Conners holding his left arm, Koskela holding his right arm, and Davidson following all three of them. (*Id.*) During the walk, Dallas allegedly requested that Defendants loosen his handcuffs because they were too tight, and because he could not feel his hands.  (*Id.*) Defendants allegedly ordered Dallas to stop resisting. (*Id.*) Dallas says that he was not resisting and was not capable of resisting because of the handcuffs. (*Id.*) Although Dallas was allegedly calm, Defendants threw Dallas facedown on the pavement. (*Id.*) As a result of that altercation, Dallas claims that he suffers from permanent scarring around his right eye and tinnitus.[1] (*Id.*)

---

[1]    According to the Verified Complaint, tinnitus is a disorder where a person hears continuous ringing. (ECF No. 1, PageID.9.)

Dallas argues that Defendants used excessive force in violation of his Eighth Amendment rights.

## IV.   Legal Standards

### A. Summary Judgment Standard

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Kocak v. Comty. Health Partners of Ohio, Inc.*, 400 F.3d 466, 468 (6th Cir. 2005).  The standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d 433, 436 (6th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). The court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

### B. Eighth Amendment Excessive Force

The Eighth Amendment limits the power of the states to punish those convicted of a crime.  Punishment may not be "barbarous," nor may it contravene society's "evolving standards of decency."  *Rhodes v. Chapman*, 452 U.S. 337, 345-46 (1981). The Eighth Amendment also prohibits conditions of confinement which, although not physically barbarous, "involve the unnecessary and wanton infliction of

pain." *Id*. at 346. Among unnecessary and wanton inflictions of pain are those that are "totally without penological justification." *Id*.

To establish an Eighth Amendment claim, Plaintiff must satisfy both an objective and subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Wilson v. Seiter*, 501 U.S. 294, 297-300 (1991). "The subjective component focuses on the state of mind of the prison officials." *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011). "The objective component requires the pain inflicted to be 'sufficiently serious.'" *Williams*, 631 F.3d at 383 (quoting *Wilson*, 501 U.S. at 298).

Under the subjective component, the core judicial inquiry is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 5-6 (1992). The Court "must judge the reasonableness of the force used from the perspective and with the knowledge of the defendant officer." *Kingsley v. Hendrickson*, 135 S. Ct. 2466, 2474 (2015). In determining whether the use of force is malicious or sadistic, the Court should evaluate the need for application of force, the relationship between that need and the amount of force used, the threat "reasonably perceived by the responsible officials," and any efforts made to temper the severity of the forceful response. *Hudson*, 503 U.S. at 6-7.

Under the objective component, the pain inflicted must be 'sufficiently serious.'" *Williams*, 631 F.3d at 383 (quoting *Wilson*, 501 U.S. at 298). The Court's inquiry regarding the seriousness of the injury is "contextual" and is "responsive to contemporary standards of decency." *Hudson*, 503 U.S. at 8–9. While the extent of

an inmate's injury may help determine the amount of force used by the prison or jail official, it is not dispositive of whether an Eighth Amendment violation has occurred. *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010).  When prison or jail officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated, "[w]hether or not significant injury is evident."  *Hudson*, 503 U.S. at 9.

### C. Qualified Immunity

Government officials, performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.  *Dietrich v. Burrows*, 167 F.3d 1007, 1012 (6th Cir. 1999); *Turner v. Scott*, 119 F.3d 425, 429 (6th Cir. 1997); *Noble v. Schmitt*, 87 F.3d 157, 160 (6th Cir. 1996); *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  An "objective reasonableness" test is used to determine whether the official could reasonably have believed his conduct was lawful. *Dietrich*, 167 F.3d at 1012; *Anderson v. Creighton*, 483 U.S. 635, 641 (1987).

"Qualified immunity balances two important interests-the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably."  *Pearson v. Callahan*, 555 U.S. 223, 231 (2009).  In making a qualified immunity determination, the court must decide whether the facts as alleged or shown make out a constitutional violation or whether the right that was allegedly violated was a clearly established right at the time of the alleged misconduct.  *Id*. at 232.  For

8

a right to be clearly established, "the right's contours [need to be] sufficiently definite that any reasonable official in the defendant's shoes would have understood that he was violating it." *Plumhoff v. Rickard*, 572 U.S. 765, 778-79 (2014).  As the Sixth Circuit explained in *Cordell v. McKinney*, 759 F.3d 573, 588 (6th Cir. 2014), "[i]n the past, we have held that 'if there is a genuine issue of fact as to whether an officer's use of force was objectively reasonable, then there naturally is a genuine issue of fact with respect to whether a reasonable jail official would have known such conduct was wrongful.' " *Id.* (citing *Kostrzewa v. City of Troy*, 247 F.3d 633, 642 (6th Cir. 2001))

If the court can conclude that either no constitutional violation occurred or that the right was not clearly established, qualified immunity is warranted.  The court may consider either approach without regard to sequence. *Id.*

## V.  Analysis of Defendants' Motion for Summary Judgment

### A.  Dallas's Request Pursuant to Fed. R. Civ. P. 56(d)

As noted in the procedural history section above, the Court granted Dallas an extension of time to file a response to Defendants' motion for summary judgment. Dallas has not filed a formal response.  But Dallas appears to have filed affidavits, citing Fed. R. Civ. P. 56(d), asking the Court to defer ruling on this motion until he can obtain necessary information.  (ECF No. 58-1, PageID.762-763, ECF No. 59, PageID.768-769.)  Thus, the undersigned must first determine whether to defer addressing Defendants' motion for summary judgment based on Fed. R. Civ. P. 56(d).

Rule 56(d) states in relevant part:

> **When Facts Are Unavailable to the Nonmovant.** If a nonmovant shows by affidavit or declaration that, for

specified reasons, it cannot present facts essential to justify
its opposition, the court may:

> (1) defer considering the motion or deny it;

> (2) allow time to obtain affidavits or declarations or
> to take discovery; or

> (3) issue any other appropriate order.

"Rule 56(d) protects a party opposing a summary judgment motion who for
valid reasons cannot by affidavit—or presumably by any other means authorized
under Rule 56(c)—present facts essential to justify the adverse party's opposition to
the motion." 10B Charles Alan Wright & Arthur R. Miller, Fed. Prac. & Proc. Civ. §
2740 (4th ed.). "The purpose behind Rule 56(d) is to ensure that plaintiffs receive 'a
full opportunity to conduct discovery' to be able to successfully defeat a motion for
summary judgment." *Doe v. City of Memphis*, 928 F.3d 481, 490 (6th Cir. 2019)
(quoting *Ball v. Union Carbide Corp.*, 385 F.3d 713, 719 (6th Cir. 2004) (other citation
omitted).

The Sixth Circuit has noted that the "filing an affidavit that complies with Rule
56(d) is essential, and that in the absence of such a motion or affidavit, 'this court will
not normally address whether there was adequate time for discovery.'" *Unan v. Lyon*,
853 F.3d 279, 292–93 (6th Cir. 2017) (quoting *Plott v. Gen. Motors Corp.*, 71 F.3d
1190, 1196 (6th Cir. 1995)).

> This Court has made clear that in reviewing a district
> court's ruling on a motion for further discovery, there are
> five factors to consider:

> > (1) when the appellant learned of the issue
> > that is the subject of the desired discovery; (2)

> whether the desired discovery would have
> changed the ruling below; (3) how long the
> discovery period had lasted; (4) whether the
> appellant was dilatory in its discovery efforts;
> and (5) whether the appellee was responsive
> to discovery requests.

*Doe*, 928 F.3d at 491 (citing *CenTra, Inc. v. Estrin*, 538 F.3d 402, 420 (6th Cir. 2008)).

"[A] motion requesting time for additional discovery should be granted almost as a matter of course unless the non-moving party has not diligently pursued discovery of the evidence." *Id*. at 490–91 (citation omitted). Stated differently, the non-moving party must show that he exercised "due diligence both in pursuing discovery before the summary judgment initiative surfaces and in pursuing an extension of time thereafter." *Resolution Trust Corp. v. N. Bridge Assocs., Inc.,* 22 F.3d 1198, 1203 (1st Cir.1994).

Here, the Court issued a CMO that set a deadline of March 13, 2019 for the close of discovery. (ECF No. 34, PageID.447.) The record reveals that Dallas did not file a motion to compel discovery before the close on discovery. But in an affidavit filed on October 8, 2019, Dallas argues that the video admitted by the Court under seal is an edited copy that fails to depict true events. (ECF No. 58-1, PageID.762.) Dallas also asserts that the video depicting the true events surrounding his Eighth Amendment excessive-force claims is being withheld. (*Id*.) In addition, Dallas states that Defendants are withholding doctors' reports and incident reports from other Corrections Officers present during the assault and battery. (*Id*.)

As an initial matter, Dallas's claims regarding medical records and incident reports should have been brought up in a motion to compel discovery during the

discovery period.  Dallas fails to explain why he did not address this issue when discovery was open.  Thus, the Court concludes that Dallas was dilatory in pursuing discovery and his Rule 56(d) request with regard to medical records and incident reports should be denied.

Second, Dallas contends that the video of the incident was edited.  The Court may certainly take this claim into consideration when addressing Defendants' motion for summary judgment.  But Dallas fails to explain why he believes the video was edited, what an unedited video would show, and why more time will help him to uncover information regarding this issue.  Thus, the Court concludes that Dallas's Rule 56(d) request with regard to the video should be denied.

## B. Dallas's Excessive Force Claim

Dallas claims that on December 9, 2016, Defendants slammed him to the ground while they were escorting him to the hole.  (ECF No. 1, PageID.9.)  Dallas alleges that this conduct violated his Eighth Amendment right to be free from the use of excessive force.

To establish a genuine issue of material fact regarding the **<u>objective component</u>** of this claim, Dallas would need to establish that the pain he suffered was "sufficiently serious." *Williams*, 631 F.3d at 383.  Although the Court's inquiry regarding the seriousness of Dallas's injuries is contextual and the seriousness is not dispositive of his claim, the seriousness of the injuries reflects the amount of force that Dallas was subjected to when he was taken to the ground.  Defendants argue that Dallas has failed to show that he suffered any serious injuries.  (ECF No. 44,

PageID.490.)  They assert that Dallas has rested on his pleading and neglected to offer any medical evidence to support his alleged injuries.[2]  (*Id.*)  Indeed, for four distinct reasons, Dallas fails to provide evidence that would show a genuine issue of material fact regarding the objective component of his Eighth Amendment claim.

First, the only reviewable medical records are limited to the evaluation Dallas received the night of the incident.  These records depict Dallas suffered only minor injuries.  (ECF No. 44-5, PageID.515-521.)  A relevant excerpt is shown below.

---

[2]    Dallas's alleged injuries are permanent scarring around his right eye and tinnitus.  (ECF No. 1, PageID.9.)

**MICHIGAN DEPARTMENT OF CORRECTIONS**

**NURSE PROTOCOL**

**SITE:  URF E**
**COMPLETED BY:  Jennifer D. Griffen, RN      12/09/2016 9:11 PM**

**Patient Name:** Lawrence Dallas
**DOB:** 09/22/1974
**ID#:**  314685

**Patient presenting with chief complaint(s)of: Integumentary.**

**Vital Signs:**

| Date | Time | Temp | Pulse | Pattern | Resp | Pattern | BP | Sp O2 | Peak Flow | Weight Lb |
|------|------|------|-------|---------|------|---------|-----|-------|-----------|-----------|
| 12/09/2016 | 9:14 PM | 98.2 | 84 | regular | 16 | | 142/80 | | | 190.00 |

**ALTERATION IN SKIN INTEGRITY**_____

**Subjective:**
Affected body part? Right eyebrow and face
How did it occur? while resisting custody directions was put down
When did it occur? 30min
Recent allergen exposure? no

**Objective:**
Wound Location: right eyebrow and face.

Examination shows active bleeding;

Signs  & symptoms of infection: No evidence of infection.

2 cm hematoma on  r eyebrow. 2 cm abrasion r eyebrow, 1 cm abrasion under r eye

**Assessment:**
Alteration in skin integrity.
Related to: laceration/abrasion,

**Plan:**
**MEDICATIONS**

| Start | Stop | Medication | Dose | Rx Units | Issued | Sig Desc |
|-------|------|-----------|------|----------|--------|----------|
| 12/09/2016 | 12/12/2016 | Ibuprofen | 200 Mg | Stock | 24 | Follow directions on package |
| 12/09/2016 | 12/12/2016 | Neosporin | 3.5 Mg-400 Unit-5,000 Unit/gram | Stock | 1 | Follow directions on package |
| 12/09/2016 | 12/12/2016 | Pain Relief | 325 Mg | Stock | 24 | Follow directions on package |

(*Id.*, PageID.515.)  The reviewable medical evidence shows that Dallas suffered from

minimal bruising and two abrasions.  (*Id.*)

Second, the video of the incident, which will be discussed below, appears to

show actions by Defendants that were not particularly violent regardless of what

precipitated the action.[3]

_____

[3]      As discussed below in greater detail below, Dallas and Defendants disagree as
to the precise facts that immediately preceded Dallas being forced to ground.  In his
deposition, Dallas swore that when he was being escorted by the Defendants that (1)

Third, Dallas failed to submit any medical evidence or otherwise to verify that the injuries he allegedly suffered were caused by the Defendants.  In one of Dallas's affidavits, he informed the Court that he was "assaulted" by a fellow level-four prisoner on July 8, 2019.  (ECF No. 58-1, PageID.761.)  As result of that altercation, Dallas swore that he incurred six fractures to skull.  (*Id*.)  Without the benefit of verifying evidence regarding the cause of Dallas's injuries or the extent of the injuries as he alleged in his complaint, Dallas fails to show a genuine issue of fact regarding the seriousness of his injuries as a result of Defendants' conducts.

Fourth, by Dallas's own admission in his deposition, Dallas initiated the physical confrontation by halting his walk to segregation and by wriggling around despite being ordered to stop resisting.  (ECF No. 44-6, PageID.524.)  Because Dallas imitated the physical confrontation and because his injuries appearing to be minor, Dallas has failed to establish a genuine issue of fact regarding the objective components of his Eighth Amendment excessive force claims.

Despite Dallas failing to establish a genuine issue of fact regarding the seriousness of his injuries, Dallas may still assert viable Eighth Amendment excessive force claims if he can show that Defendants applied force maliciously and sadistically to cause harm. *Hudson*, 503 U.S. at 9.

---

Defendants were issuing him verbal commands to stop resisting, (2) that he "stop[ped] in [his] tracks" and made "a minor movement because [he] standing there and the cuffs were so tight."  (ECF No. 44-6, PageID.524.) Defendants, on the other hand, swore that Dallas was frustrated and lunged at Conners immediately prior to Dallas being placed on the ground.  (ECF No. 44-2, PageID.503-504; ECF No. 44-3, PageID.508; ECF No. 44-4, PageID.512.)   In either version, Dallas's conduct precipitates him being placed on the ground.

The **subjective component** is satisfied when the Defendants apply force "maliciously and sadistically to cause harm." *Id.* at 5-6. To conclude whether Defendants' applied force maliciously and sadistically, the undersigned analyzes the reasonableness of Defendants' use of force. *Id.* at 6-7. And reasonableness is determined by (1) the relationship between that need and the amount of force used, (2) the threat "reasonably perceived by the responsible officials," and (3) any efforts made to temper the severity of the forceful response. *Hudson*, 503 U.S. at 6-7.

Dallas provides little evidence to address the reasonableness of Defendants' actions. As noted above, the record indicates that Dallas and Defendants disagree as to the immediate cause of Dallas being forced to the ground. In his deposition, Dallas stated that, as he was being escorted to segregation, he (1) complained about his handcuffs being too tight, (2) halted his walked because of the pain induced from the handcuffs, (3) wriggled – or made "a minor movement" – while standing in pain, and (4) "wasn't really paying attention" to the Defendants' loud verbal orders. (ECF No. 44-6, PageID.524-525.)

All three Defendants provided a different description to the facts immediately preceding Dallas being placed on the ground. Each swore that Dallas began to pull away from Conners and Koskela – the COs escorting Dallas by his arms – before they placed him on the ground. (ECF No. 44-2, PageID.503; ECF No. 44-3, PageID.508; ECF No. 44-4, PageID.512.) Davidson specifically described Dallas's pulling as "resisting" and stated that Dallas was growing increasingly frustrated as he was being escorted to segregation. (ECF No. 44-2, PageID.503.) Conners and Koskela

16

also swore that Dallas lunged at Conners with his right shoulder.[4]  (ECF No. 44-3, PageID.508; ECF No. 44-4, PageID.512.)  The COs swore that they acted in good faith by placing Dallas on the ground and fitting him with leg restraints.  (*Id*.)  In addition, none of the Defendants can recall Dallas complaining about his handcuffs being too tight.  (ECF No. 44-2, PageID.503; ECF No. 44-3, PageID.508; ECF No. 44-4, PageID.512.)

The video footage depicting the scene is not particularly clear, but it does provide strong support for Defendants' description of the event.[5]  The video shows – at a distance – that Dallas and his escort were walking in a business-like fashion across the yard.  (ECF No. 44-9.)  Then, as the group approached the end of the yard, Dallas was abruptly placed on the ground.  After a few seconds, the camera operator zoomed-in on the incident.  At that point, the video shows Defendants holding Dallas on the ground and fitting him with more restraints.  Nothing in the video footage supports a finding that there is a genuine issue of fact as to whether Defendants applied excessive force to Dallas when placing him on the ground.

In summary, the parties disagree about what caused the Defendants to place Dallas on the ground.  Dallas says he was wriggling in discomfort due to the tightness of the handcuffs; Defendants say that Dallas was actively resisting.  But the parties

---

[4]    Davidson, who was following behind Conners, Koskela, and Dallas, swears that Dallas was attempting to pull away from Conners and Koskela.  (ECF No. 44-2, PageID.503.)

[5]    The video is under seal.  (ECF No. 44-9.)

do not disagree on one key point:  that actions by Dallas triggered a response by Defendants.    Furthermore, the video evidence[6] indicates that the Defendants' restraint of Dallas by placing him on the ground was not particularly violent.  Finally, the objective medical records before the Court do not indicate injuries of the seriousness described by Dallas.

The undersigned concludes that Dallas failed to establish a genuine issue of fact that Defendants violated his Eighth Amendment rights by applying excessive force to him.  Consequently, the undersigned also concludes that there is no genuine issue of fact that Dallas's claims are barred by the doctrine of qualified immunity because no constitutional violation occurred.  *See Pearson*, 555 U.S. at 232.

### D. Motion to Correct or Amend Dallas's Complaint

Dallas filed a motion to amend his complaint with a proposed amended complaint.  (ECF No. 60, PageID.777; ECF No. 60-1, PageID.783.)  His motion and proposed amended complaint are not particularly clear, and Dallas does not cite to Fed. R. Civ. P. 15 (regarding amended and supplemental pleadings) or related caselaw.  It appears that Dallas seeks to add new claims of intentional infliction of distress (IIED).  (ECF No. 60-1, PageID.787-789.)

Federal Rule of Civil Procedure Rule 15(a)(2) provides that "a party may amend its pleading only with the opposing party's written consent or the court's leave. The Court should freely give leave when justice so requires."  However, the court may

---

[6]    Dallas's claims that the video was changed is not supported by any evidence other than Dallas's statement.  In the view of the undersigned, Dallas's statement on this point is not sufficient to call in to question to authenticity of the video-recording.

deny leave to amend a complaint where the amendment is brought in bad faith, will result in undue delay or prejudice to the opposing party, or is futile.  *Crawford v. Roane*, 53 F.3d 750, 753 (6th Cir. 1995).  "A proposed amendment is futile if the amendment could not withstand a Rule 12(b)(6) motion to dismiss." *Rose v. Hartford Underwriters Ins. Co.*, 203 F.3d 417, 420 (6th Cir. 2000).   The undersigned recommends that the District Court deny Dallas's motion to amend his complaint for the following reasons.

First, the Court has already permitted Dallas to add new Defendants and claims early in the case.  (*See* ECF No. 9, PageID.92 (Dallas's supplement to add parties), ECF No. 11, PageID.97 (supplement to complaint);  ECF No. 15, PageID.170 (Order accepting these pleadings as supplements to the complaint).)  Dallas does not explain why he failed to add his IIED claim early on in the case.

Second, Dallas should have been aware of these IIED claims because the claims are based on the same facts or set of facts as his Eighth Amendment excessive force claims.  (ECF No. 60-1, PageID.787-789.)

Third, Dallas's IIED claims are based in state law.  The Court could exercise supplemental jurisdiction over these claims pursuant to 28 U.S.C. § 1367.   But, if the Court dismisses Dallas's federal claims, which is the recommendation here, the Court should not retain jurisdiction over his state law claims.  *See* 28 U.S.C. § 1367(c)(3) (stating district court may decline to exercise supplemental jurisdiction over a claim if the court has dismissed all claims over which it has original jurisdiction); *Musson Theatrical, Inc. v. Federal Exp. Corp.*, 89 F.3d 1244, 1254 (6th Cir. 1996) (noting

19

district court abused its discretion in retaining jurisdiction over "state law claims on a theory of supplemental jurisdiction after dismissal of the federal claims upon which supplemental jurisdiction depended").

### E. Recommendation

The undersigned recommends that the Court:

(1) Deny Dallas's request, pursuant to Fed. R. Civ. P. 56(d), to defer decision on Defendants' motion summary judgment and allow additional for discovery (ECF No. 58-1, PageID.763; ECF No. 59, PageID.766-769);

(2) Grant Defendants' motion for summary judgment (ECF No. 43, PageID.477);

(3) Deny Dallas's motion to amend his complaint (ECF No. 60, PageID.777);

(4) Dismiss Dallas's Eighth Amendment excessive-force claims against Defendants with prejudice.

If the Court accepts this recommendation, the case is dismissed.


Dated:  March 4, 2020                                   /s/ *Maarten Vermaat*
                                                        MAARTEN VERMAAT
                                                        U. S. MAGISTRATE JUDGE


### NOTICE TO PARTIES

Any objections to this Report and Recommendation must be filed and served within fourteen days of service of this notice on you. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b).  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to file timely objections may constitute a waiver of any further right of appeal.  *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).